## STONE, Appellant, v. COOK et al.

### Division One, February 10, 1904.

1. **Will:** ACCEPTING BENEFITS: SUBSEQUENT ELECTION TO SET ASIDE. One who accepts of legacies given by a will can not thereafter contest its validity unless he received the legacies without knowledge of his right to elect between the benefits so conferred and his right to the property outside of the will, or unless he was induced by fraud or deception to accept the benefits conferred. In either of these cases he may bring an action to contest the will, provided, first, that innocent third persons will not suffer by the revocation; second, that there has been no unreasonable delay in bringing the action; and, third, that he pay into court the benefits received.

2. ——: ——: ——: KNOWLEDGE: TENDER. The petition states that plaintiff accepted the $500 specifically given her by the will, and $600, her share in the residuum, "under protest, and that she insisted that the will was invalid and that she only received the same because under the law she would be en-

titled to one-third of the entire estate, a sum much larger than the amount by her received," and she avers that she is ready and willing to pay said sum so received into court. *Held*, that this petition did not entitle plaintiff to maintain an action to have the will set aside for several reasons: first, it appears from the face of the petition that plaintiff knew at the time she received the legacies that she had a right to elect to take under the will or by operation of law, and there is no charge that she was induced by any fraud or deception to accept them; second, there is no showing that she began the action without unreasonable delay; third, she had not actually paid into court the legacy received at or before filing her suit; fourth, the petition shows on its face that innocent persons would suffer, for it avers that plaintiff had received $600 as residuary legatee, which implies that all special legacies had been paid, and if the will were now set aside the executors would be responsible for the special legacies thus paid.

3. ———: ———: ———: ESTOPPEL: BY DEMURRER. Where the facts constituting the defense of estoppel affirmatively appear on the face of the petition, that defense can be raised as effectively by demurrer as by answer.

Appeal from Audrain Circuit Court.—*Hon. E. M. Hughes*, Judge.

AFFIRMED.

*Geo. Robertson* for appellant.

(1)   Plaintiff is not barred from contesting the will after the lapse of a period of five years, for the reason that she is a married woman. Sec. 4624, R. S. 1899; Linville v. Greer, 165 Mo. 380; Rosenberger v. Mallerson, 92 Mo. App. 27.   Section 4622 confers the right to contest and section 4624 limits this time to five years, except as to married women, giving them until the disability of coverture is removed.   Hughes v. Burriss, 85 Mo. 660.   (2)   Estoppel is an affirmative defense and must be specially pleaded, and can not be made by demurrer. McClannahan v. Payne, 86 Mo. App. 284; Sanders v. Chartrand, 159 Mo. 382; Chance v. Jennings, 159 Mo.

544; Casler v. Gray, 159 Mo. 588; Kansas Moline Plow Co. v. Wayland, 81 Mo. App. 305; Cadematori v. Gauger, 160 Mo. 352; Hammerslough v. Cheatam, 84 Mo. 13; Bray v. Marshall, 75 Mo. 327; State ex rel. v. Branch, 151 Mo. 622. (3) The amount of the estate involved in the will was $12,000. Plaintiff's share under the law would have been $4,000. She accepted under the will $1,100, slightly more than one-fourth of her share under the law. Her conduct does not constitute estoppel. Before an act can constitute estoppel it must be some act by which another is induced to believe something and must act upon this belief to his prejudice. Had the plaintiff made the will, or induced or brought about the will, then it might be claimed that, as between her and the other heirs after there had been a distribution of the property under it, she is estopped from contesting the will. But to accept her share under the will, being a lesser amount than she was entitled to under the law were the will broken, does not mislead or induce another into any action to his prejudice. 11 Am. and Eng. Ency. of Law (2 Ed.), pp. 387, 388. "Estoppel *in pais* may be defined to be a right arising from acts, admissions or conduct, which have induced a change of position in accordance with the real or apparent intention of the party against whom they are alleged." There can be no estoppel as against plaintiff unless it be shown that defendants have incurred some liability or have been induced to do something to their prejudice in consequence of the plaintiff's conduct. Jones v. McPhillips, 82 Ala. 116; Stevens v. Demett, 51 N. H. 333; Brown v. Bourne, 30 N. Y. 541; DeBerry v. Wheeler, 128 Mo. 84; Smith v. Roach, 59 Mo. App. 115; Bales v. Perry, 51 Mo. 449; Noble v. Blount, 77 Mo. 235; Blodgett v. Perry, 97 Mo. 263; State ex rel. v. Branch, supra. There is nothing stated in the petition from which it appears that the plaintiff, by accepting only a part of which was coming to her, misled or prejudiced any defendant. Where a widow has accepted all the provisions of a will

her right of renunciation remains for the period of twelve months. Bretz v. Matney, 60 Mo. 444; Burgess v. Bowles, 99 Mo. 543; Spratt v. Lawson, 75 S. W. 642.

*Fry & Rodgers* and *E. C. Kennan* for respondents.

(1) Plaintiff's cause of action is and rightfully should be barred by the special five-year limitation statute (Secs. 4622 and 4624, R. S. 1899). This special statute limiting the time in which wills may be contested and providing the manner of making such contest was enacted long prior to the Married Woman's Act of 1889, and ever since the enactment of the last mentioned law in 1889, there can be no question but what this plaintiff had a right to sue and be sued, as the will was probated in March, 1896, and at that date this plaintiff was under no disability, as the Married Woman's Act had removed the disability of coverture long before. The interest of plaintiff in the estate of her father is separate estate, and the trend of all legislation as well as the decisions of our courts, in these later days, is to give married women largely increased powers, especially over their separate property, and require of them in return conformity to the usual and ordinary rules of legal procedure, and it will be observed that in this case the cause of action accrued in 1896 to the plaintiff, after the enactment of the act removing her disability, while in the cases of Throckmorton v. Pence, 121 Mo. 50, and of Lindell Real Estate Co. v. Lindell, 142 Mo. 61, the cause of action in both instances accrued prior to the enactment of the Married Woman's Act of 1889. The weight of authority is in favor of the rule that the Married Woman's Act enabling married women to sue as to their separate property, repeal in so far the statutory disability, and that the general married women's acts, by implication, repeal altogether the disabling clause of the statute, and cause it (the statute of limitation) to run against married women as it would if they were single. 13 Am.

and Eng. Ency. Law, 739 (d); Geisen v. Heidrich, 104 Ill. 537; Brown v. Cousens, 51 Me. 306; Dunham v. Sage, 52 N. Y. 230. (2) A demurrer is a "pleading," and as the demurrer was the only pleading filed by the defendants in the court below, the defense of election or estoppel is sufficiently pleaded therein. Burton v. Martin, 54 Mo. App. 134. (3) The plaintiff had her choice to accept the provisions of the will or institute a proceeding to contest it, and if successful, then to take under the law, and as the petition shows on its face that she accepted all the beneficial provisions made for her in the will, she is bound by her acceptance. 2 Herman on Estoppel and Res Judicata, sec. 1028, p. 1156; Fox v. Windes, 127 Mo. 502. This doctrine of election is but an extension of the law of equitable estoppel. 1 Herman on Estoppel and Res Judicata, p. 11; Fox v. Windes, 127 Mo. 502. The plaintiff's interest in the estate of her father concerns her separate property, and she can be estopped as much as any other property owner, although a married woman. Blair v. Railroad, 89 Mo. 383; Bowen v. Bowen, 90 Mo. 184; Gilliland v. Gilliland, 96 Mo. 522; Henry v. Sneed, 99 Mo. 425; Leete v. Bank, 115 Mo. 184; Stone v. Bank, 81 Mo. App. 9.

MARSHALL, J.—This is an action under the statute to contest the will of William T. Cook.

The plaintiff is a daughter of the testator, and the defendants are the other children, grandchildren, daughter-in-law, and executors of the deceased. The will was executed on December 17, 1895. Shortly thereafter the testator died, and the will was probated in March, 1896.

By the first item of the will the testator bequeathed to his grandson, E. C. Cook, one hundred and sixty acres of land to enable him to support and care for his invalid mother. By the second item of the will the testator bequeathed to his daughter, Martha Corner, eighty acres of land. By the third item of the will the testator bequeathed to his daughter, Mary Stone, the plaintiff,

a legacy of five hundred dollars, provided that sum could be realized from the sale of his interest in certain land, which was subject to a mortgage for $1,750 and interest, and at all events he directed that if five hundred dollars could not be so realized, she should have the excess over the amount necessary to pay the mortgage. By the fourth item of the will the testator directed that his store-house and lot in Laddonia be sold, and out of the proceeds the sum of fifty dollars a year for six years be paid to the trustees of the Methodist church to be used by them to pay the pastor's salary. By the fifth item of the will the testator bequeathed to two granddaughters the sum of thirty-five dollars each, to buy a watch as a token of affection of their departed grandmother. By the sixth item, the testator set apart the sum of one hundred dollars, the interest on which he directed to be used to keep in repair the graves of the testator and his family. By the seventh item, the testator bequeathed the residue of his estate to his daughter, Mary Stone, the plaintiff, Martha Corner, the defendant, and his daughter-in-law, the widow of his deceased son William R. Cook.

After reciting the relationship of the parties litigant and after setting out the will in full, wherein the testator declares himself to be ninety-one years old and of sound mind, the petition charges that at the time the will was made the testator "was old, feeble of body and was of unsound mind and incapable of making a will," and then charges that the will was procured by the undue influence of the grandson E. C. Cook, and of the daughter-in-law, and of a witness to the will. The petition then states that the will was admitted to probate in Audrain county at the March term, 1896, of the probate court.

The petition then alleges that the plaintiff received from the executors the special legacy of five hundred dollars, bequeathed to her by the third item of the will, and also received six hundred dollars under the seventh item of the will, being one-third of the residuum of the

estate, but says she received said amounts under protest, insisting that she received said sums only because under the law she was entitled to one-third of the estate, which she says would amount to four thousand dollars, and she avers that she is ready and willing (she omits to say able) to pay said sums so received into court or to have them deducted from her share of the estate, if the will is set aside.

The prayer of the petition is that issue be joined as to whether or not the will is the will of William T. Cook.

The suit was made returnable to the September term, 1901, of the Audrain Circuit Court.

The defendants demurred to the petition on the ground that it does not state facts sufficient to constitute a cause of action, in this, first, because it shows on its face that it was not instituted within five years after the will was probated in common form, and hence is barred by limitation; and, second, because the petition shows on its face that the plaintiff accepted the benefits accruing to her under the will, and is therefore estopped to deny or contest the validity of the will.

The circuit court sustained the demurrer, the plaintiff refused to plead further, judgment was entered for the defendant, and the plaintiff appealed.

I.

The pivotal question here involved is whether the plaintiff having received the legacies bequeathed to her by the will, can be heard to contest the validity of the will, upon bringing into court the sums she has received under the will.

The fact that she received the legacies under protest or under a claim that they constituted only a part of what she was entitled to by law, outside of the will, is wholly immaterial, and avails nothing. [Pollman Coal Co. v. St. Louis, 145 Mo. 651; McCormick v. Transit Co., 154 Mo. 191; McCormick v. St. Louis, 166 Mo. l. c. 345-6.]

Woerner's Am. Law of Adm'n, vol. 1 (2 Ed.), marg. p. 500, says: "But since a person can not hold under a will and also against it, one who accepts a beneficial interest under a will thereby bars himself from setting up a claim which will prevent its full operation, at law or in equity; and such person will not, therefore, be allowed to contest a will, unless he return the legacy received."

The general rule laid down in the text is supported by the following cases, cited in the notes to the text: Smart v. Easley, 5 J. J. Marsh. 214; Herbert v. Wren, 7 Cranch 370; Preston v. Jones, 9 Pa. St. 456; Smith v. Guild, 34 Me. 443; Hyde v. Baldwin, 17 Pick. 303; Benedict v. Montgomery, 7 Watts & S. 238; Smith v. Smith, 14 Gray 532; Van Duyne v. Van Duyne, 14 N. J. Eq. 49; and Fulton v. Moore, 25 Pa. St. 468. To the same effect is Syme v. Badger, 92 N. C. 706.

In all these cases it is held, without qualification, that one who accepts a benefit under a will or deed thereby elects to take under the instrument and is estopped thereafter from contesting the validity of the instrument. Nothing is said in any of these cases about the right of such person to bring into court the benefits so received, and thereupon to contest the instrument.

However, in Holt v. Rice, 54 N. H. l. c. 402, while the general rule is announced and affirmed, it is held that one who has received a benefit under a will, may pay the amount so received into court, and thereafter contest the will, though it is said, "under circumstances of delay, connected with other circumstances, it has been held to preclude the party from contesting the will afterwards," and it was allowed in that case because there had been no great delay. In Miller's Appeal, 159 Pa. St. l. c. 574, the contesting legatee was required to pay the money received into court before he was permitted to proceed, and it was held that "where the acts set up are equivocal, or were done in ignorance of the rights of the doer, or where they consist merely of the receipt of a pe-

cuniary legacy, and the money is returned before the appellant proceeds beyond the entry of his appeal'' (which is like our proceedings to contest the will) ''they will not amount to an estoppel.''

In the Matter of Soule, 1 Connoly's Repts. 1. c. 54, the sufficiency of a mere offer to refund, contained in a petition to contest a will, is discussed, and held to be insufficient, and that nothing short of an actual payment into court of the benefits received *before the filing of the petition*, will entitle a beneficiary under a will who has received benefits thereunder, to repudiate and contest the will.

In the Matter of Peaslee, 73 Hun 1. c. 114, the rule is so admirably stated as to justify the following excerpt therefrom:

''It is a well-settled proposition in law, as well as in equity, that he who accepts and retains a benefit under an instrument, whether deed, will, or other writing, is held to have adopted the whole, and to have renounced every right inconsistent with it. The rule has found expression in many actions and with widely differing facts. A few of them only will be referred to.

''In Chipman v. Montgomery (63 N. Y. 234), which was an action in the Supreme Court to obtain a judicial construction of a will, and for an accounting, Judge ALLEN, speaking for the court, said: 'Two of the plaintiffs have received in whole or in part the legacies given them by the will, and having accepted the benefits of the provision made for them, can not be heard in opposition to other parts of the instrument, except by proof of circumstances showing that they had not intelligently elected to take under the will, rather than in opposition to it, and a return of all that has been received by them.' And he quoted with approval Lord REDESDALE's decision, in Birmingham v. Kirwan (2 Sch. & Lef. 444), that this rule of election is applicable to every species of instrument, whether deed or will, and to be a rule of law as well as equity.

Stone v. Cook.

"The rule is also asserted in Havens v. Sackett (15 N. Y. 365.)

"In Mills v. Hoffman (92 N. Y. 181), which was an appeal from a decree of the Surrogate's Court compelling an administrator to account, the objection overruled by that court being that the petitioner was barred, because of an entry of judgment, in which she was a party defendant, although an infant, and the subsequent distribution of the estate in pursuance of the judgment by which the moneys came into the hands of her guardian and upon her majority to her. After this latter event the judgment was vacated and set aside as to her, on the ground that the appointment of a guardian *ad litem* to represent her had been irregular, and the Court of Appeals held that she was estopped from controverting in the Surrogate's Court the judgment under which she had received benefits.

"In Matter of Soule (1 Connoly 18), the right of a legatee who had received moneys under a will to claim revocation of probate without making full restitution to the executors was denied.

"Numerous cases have arisen under wills where this principle has been applied. (Hamblett v. Hamblett, 6 N. H. 333; Van Duyne v. Van Duyne, 14 N. J. Eq. 49; Weeks v. Patten, 18 Maine 42; Smith v. Guild, 34 Id. 443; Hyde v. Baldwin, 17 Pick. 303; Smith v. Smith, 14 Gray 532; Bell v. Armstrong, 1 Adams 365; Braham v. Burchell, 3 Id. 243.)

"The learned counsel for the appellant, while citing no authorities asserting a contrary proposition, has carefully analyzed and elaborately discussed nearly all the cases we have cited, in order to make it appear that they are distinguishable from the case at bar. In their facts they are different from this case and they differ from each other, but they all tend to make good the assertion which may be found running through the books, that he who receives money or property, or a benefit of any kind, under an instrument, whatever its character, or his

relation to the maker of it, can not question the instrument in whole or in part. But the appellant urges that the reason for the rule does not apply in this case, and therefore, the rule should not obtain. Here he says no injury can result to the executors or any one else, because the petitioner is permitted to contest the will while retaining the $7,000 which she received from the executors, because if the will be set aside, she as one of the next of kin, will be entitled to receive a larger sum of money than $7,000; and, therefore, the executors can be amply protected by the surrogate. It may be true that if the contest should proceed it would so turn out, but of that we are not assured.

"It does not appear that should the petitioner be successful in her contest, as a result her mother's intestacy will be established.

"There may be other and prior wills in existence, the validity of one of which may be established, with the possible result that the petitioner will not receive thereunder a legacy sufficient in amount to make good the advancement to her by these executors. Certainly the contrary can not be safely assumed.

"The fact that the petitioner received this money, and expended it before becoming aware of the facts which encouraged her to enter upon a contest of the will, may perhaps be unfortunate for her. If misfortune it be, it arises of course from the necessities which induced her to expend the money. Where a person asks that a rule be not applied, on the ground that the reason upon which it is founded is not present, the burden rests upon him to establish clearly the facts which he relies on to support his contention. The petitioner took the money and used it, and until she puts the parties in a position where, whatever the result may be, no one can be the loser, because of the payments originally made to her, she is not in a situation to attack the will."

The general doctrine of election is well stated in 11 Am. & Eng. Ency. Law (2 Ed.), p. 59, and the note to

the text on page 60, contains a reference to a multitude of cases showing that the rule is almost universal.

And on page 98 the same author says, "Applying the principle that knowledge is essential to constitute a valid election, it is established that where the act is induced by deception or fraud, or where the person electing acted under an ignorance of the facts or under a misapprehension of his rights, and innocent third parties will not suffer by a revocation, the act may be revoked or set aside. But such election can be revoked only by restoring the property received under it."

And at page 78 the author says that while some courts hold that a married woman can not elect, other courts hold to the contrary, and in any event if she seeks to revoke the election she must bring the benefits she has received into court.

In Fox v. Windes, 127 Mo. l. c. 511, this court quoted the rule laid down by Herman on Estoppel as follows: "The doctrine of election is founded upon the principle that there is an implied condition, that he who accepts a benefit under an instrument must adopt the whole of it, conforming with all its provisions, and renouncing every right inconsistent with them. The principle is recognized and established in this country almost precisely the same as in England, and rests upon the equitable ground that no man can be permitted to claim inconsistent rights with regard to the same subject, and that any one who claims an interest under an instrument, is bound to give full effect to that instrument as far as he can. A person can not accept and reject the same instrument, or, having availed himself of it as to part, defeat its provisions in any other part; and this applies to deeds, wills, and all other instruments whatever. [2 Herman on Estoppel and Res Judicata, sec. 1028, p. 1156. See, also, 2 Story's Eq. Jur. (13 Ed.), sec. 1080.] This doctrine of election which prevents the assertion of repugnant rights, is but

an extension of the law of equitable estoppel.    [1 Herman on Estoppel and Res Judicata, p. 11.]''

The sum of the matter then is, that as a general rule one who has received a benefit under a deed, will, or other instrument can not thereafter contest its validity, but the general rule is subject to this qualification, that if the benefit was received without a knowledge of his right to elect between the benefit so conferred and of his right to the property outside of the deed, will or instrument, or if he was induced by fraud or deception to accept the benefit conferred by the instrument, he may revoke the election and contest the validity of the instrument and claim under the law, provided that innocent third persons will not suffer by a revocation, and provided there has been no unreasonable delay in exercising the right of revocation, and provided he pay into court the benefits received.

Apply this rule to the case at bar and the case is easily solved.    It expressly appears from the face of the petition that the plaintiff knew that she had a right to elect to take under the will or by operation of law, at the time she received the legacies, for she says she ''accepted the same under protest and insisted that the will was invalid and only received the same because under the law she would be entitled to one-third of the entire estate, a sum and an amount much larger than the amount received by her as herein stated.''    Therefore the plaintiff acted with full knowledge of her legal right of election, and there is no charge that she was induced to accept the benefit by any fraud or deception. It does not appear how long she waited after receiving the benefit before she attacked the validity of the will.

The allegation that she is ready and willing to pay the amount received into court or to have it deducted from her share of the estate if the will is set aside, is not sufficient to bring her within the rule  which entitles one to contest an instrument after receiving a benefit under it, for the rule requires that the benefit received

shall be actually paid into court at or before the filing of the suit.

In addition to this, innocent third persons will suffer if she is allowed to revoke her election, upon returning the benefits she has received. The major portion of the benefits she has received arose out of the residuum of the estate. That means that all the special legacies had been paid, before such residuum was ascertained and paid. These special legacies arose solely out of the will, and without the will that money would have gone to other persons. Upon the faith of the plaintiff's acceptance of the benefits conferred upon her by the will, the executors paid out the special legacies to other persons. The plaintiff stood by and saw the executors do so. If the plaintiff should now be permitted to have the will set aside, upon payment into court of the benefits received by her, the special legacies paid by the executors would be lost to them, for the money so expended would go to the heirs, of whom the plaintiff was one. Thus the executors would suffer by a revocation. It is true that the statute permits a will to be contested at any time within five years after its probate in common form, and the statute contemplates that the estate may or will be wound up before that time, and persons who take under a will know that the estate thus derived is liable to be divested by a successful attack, thereafter, upon the will. But whilst this is true, the lawmakers never intended to permit a legatee under a will to accept the benefits conferred by the will, and then stand by and see the estate wound up, or practically wound up, and then begin proceedings to contest the will, upon returning only the amount received by the contesting legatee. Such a proceeding falls within the rule that denies the right to contest where there has been unreasonable delay.

In short, it is plain from the petition that the plaintiff thought she could accept the benefits and then contest the will, and simply have the benefits received de-

ducted from her share of the estate after the will was set aside. By so doing she stood to gain everything if she succeeded and to lose nothing if she failed in the contest proceedings. The law does not sanction such a speculative proceeding.

It follows that the plaintiff has not shown herself entitled to maintain this action.

It is contended, however, that estoppel is an affirmative defense and can not be raised by demurrer. Estoppel is an affirmative defense, and so is coverture, and the statute of limitations, and contributory negligence, and payment, and release and many others, and such defenses must be expressly pleaded in the trial court. But where the facts constituting such defense affirmatively appear on the face of the petition, the question can be raised by demurrer to the petition, just as effectually and equally as scientifically, as by answer or plea. The petition in this case stated the facts upon which the defense of estoppel is predicated, and it would seem as if the pleader had invited a determination by the inexpensive and speedy method of a demurrer, in order to avoid the costly and tedious method of raising the same question of law, by an answer and a trial. Wherever or however the essential facts appear, all else is a question of law, and can be raised by any of the methods provided for the determination of questions of law.

This conclusion makes it unnecessary to decide whether, since the adoption of the married woman's acts, the five-year limitation for instituting suits to contest wills, applies to a married woman.

The judgment of the circuit court is affirmed. All concur.