**STATE of Missouri ex rel. KNIGHT OIL COMPANY, a Corporation, Relator,**

**v.**

**Honorable Paul E. VARDEMAN, Judge of the Circuit Court of Jackson County, Respondent.**

**No. 51950.**

Supreme Court of Missouri.

In Banc.

Dec. 30, 1966.

———◆———

Oscar S. Brewer, Kent E. Whittaker, Kansas City, for relator.

Brewer & Myers, Kansas City, and Darrah, Mellor & Sparks, Wichita, Kan., of counsel.

Samuel J. Molby, James F. Duncan, Kansas City, for respondent.

Watson, Ess, Marshall & Enggas, Kansas City, of counsel.

EAGER, Judge.

This is an original proceeding in mandamus filed in this court. The matter was instituted by the filing of a petition in prohibition, but we granted leave to amend. Thereafter our alternative writ in mandamus was issued. From the petition, the return, the reply, and the exhibits thereto, the facts and occurrences appear as we shall now relate them.

On June 19, 1963, relator filed suit in Jackson County against Merchants-Produce Bank of Kansas City, Missouri, alleging that on October 4, 1961, plaintiff was the owner of a check payable to it in the amount of $205,709, drawn by Associates Discount Corporation on the First Bank and Trust Company of South Bend, South Bend, Indiana, and certified by that Bank; that the said check was presented to defendant by one Charles I. Hayes, purporting to act as plaintiff's President, and that defendant wrongfully paid the proceeds to a corporation owned or controlled by Hayes

upon his unauthorized endorsement; that plaintiff was thus deprived of the proceeds, that it was and is the owner of the check, and that the check was thus converted by the defendant. Plaintiff prayed judgment for the full amount of the check, with interest.

Defendant filed answer, denying all the substantive allegations of the petition. More than two years later and on November 29, 1965, defendant filed its "Motion to Dismiss or Require Joinder of Additional Party Plaintiff" wherein it alleged (after reciting certain allegations of the petition): that on November 1, 1962, plaintiff and Associates Discount Corporation entered into a "joint adventure agreement" wherein they agreed to share equally any sum recovered from the defendant by judgment or settlement in any suit on the check in question and agreed to share equally the total cost and expense of any action so filed; that "as the result of said agreement plaintiff and Associates Discount Corporation had a joint interest" in the action, and that there was accordingly a nonjoinder requiring joinder or dismissal; further, that a complete determination of the controversy could not be had without the presence of Associates. An order was prayed accordingly.

The agreement so referred to stated in essence that Knight Oil Company (plaintiff below and relator here) was "alleged" to be indebted to Associates in the sum of $164,-275.10, on promissory notes secured by accounts receivable; that in compromise and settlement it was agreed: that plaintiff would pay Associates $72,000, at stated times within sixty days; that Associates would cancel all such notes and withdraw its assignment; that plaintiff would, if necessary, prosecute a suit against Merchants-Produce Bank to recover the amount of the check already described; that plaintiff and Associates would share equally in the proceeds of any recovery by judgment or settlement, and that the cost and expenses should be borne equally; that the attorneys would be selected by plaintiff on contingent fees of not to exceed 33⅓%, the precise

percentage to be determined by the difficulties encountered and the necessity of local counsel.

The trial court, after the submission of written suggestions pro and con, entered its order on January 6, 1966, sustaining the motion to require the joinder of the additional party and allowing plaintiff fifteen days in which to file an amended petition joining Associates as a plaintiff or a defendant; the motion to dismiss was overruled conditionally. In the present proceeding relator seeks our writ requiring respondent to vacate that order, insisting that it has the right to prosecute its action alone, that the cause of action was not assigned, that there is no "joint interest," and that the presence of Associates is not necessary to a complete determination of the controversy. The return of respondent to our alternative writ admits the authenticity of the exhibits, but denies that relator has fully stated the allegations and provisions of its original petition and of the agreement; it denies relator's right to prosecute its action alone, alleges that respondent had jurisdiction of the subject matter and of the person of Associates, that relator and Associates were parties to a "joint adventure agreement" with a common interest, a mutual right of control, and an agreement to share the recovery and the expenses, thus resulting in a nonjoinder. The return further alleges that Associates issued the check in question knowing that Hayes intended to use the proceeds to purchase the controlling stock of relator, that Associates made the transaction possible, and that it would be unconscionable to let Associates "recover more than $100,000 from defendant * * *" without having it made a party to the action; also, that relator would not be prejudiced by the joinder, and that a complete determination of the controversy could not be had without such joinder.

The reply denies that the agreement had the legal effect claimed by respondent and denies the new matter affirmatively alleged in the return, except that relator admits that Associates issued the check knowing

that Hayes intended to use the proceeds "to purchase the capital stock of Relator."

Although matters which we consider extraneous and irrelevant have thus been introduced into the pleadings, there are sufficient facts shown without controversy to permit a determination of the validity of respondent's order on the motion, which is the only question involved here. We shall disregard those matters, both in pleadings and briefs, which we deem irrelevant to the basic issues. There is no doubt that respondent had jurisdiction of the subject matter generally, and of the persons of the original parties; also, that it could obtain personal jurisdiction of Associates, if the situation justified it. But extraordinary writs are issued when necessary to prevent an excess of jurisdiction, as well as to prevent or stop action where no jurisdiction exists. State ex rel. Siegel v. Strother, 365 Mo. 861, 289 S.W.2d 73; State ex rel. McCarter v. Craig, Mo., 328 S.W.2d 589. Counsel for respondent say that while they have found cases in which mandamus was employed to require a lower court to join a party they have found none where the writ was used to prevent the joining of a party. If, in fact, the court has exceeded its lawful jurisdiction in ruling on a matter of joinder, there is no reason why the writ should not be used in either situation. Relator cites several cases where a trial court was required by mandamus to permit intervention by one who had the absolute right to intervene under the statute. We agree with respondent that these cases are not specifically in point here.

Rule 52.04 provides (a), V.A.M.R. that persons having a joint interest shall be made parties, and (b) that, when a complete determination of the controversy cannot be had without the presence of other parties, the court may order them brought in. This Rule replaced § 507.030, RSMo 1949, V.A. M.S., which was identical. The trial court did not indicate whether it acted under part (a) or part (b) of the Rule; we must consider both.

It appears from the reply brief that the Bank, on October 3, 1966, filed in the original suit, after the issues were made up in our proceedings, its third-party petition against Associates and also its amended answer and counterclaim, in all of which sundry issues were raised. We shall take no further note of those proceedings, for they do not constitute any part of our record or issues here.

Counsel for respondent say that relator "makes no claim that respondent over-stepped his discretion in ordering the joinder of Associates." Relator does claim that the order of joinder was unlawful, as not made within the provisions of our rule, and thus, broadly construed, it would seem to claim that respondent exceeded the limits of such discretion as existed. However, the point is immaterial for, having issued our alternative writ and assumed jurisdiction, we would proceed on our own moton, if necessary, to determine whether respondent exceeded his jurisdiction, including the exercise of any abuse of discretion. The trial court does have a discretion in the first instance to determine, under the rule, whether the party sought to be joined is a necessary party; if it has a joint interest, it must be joined; if its presence is *necessary* to a complete determination of the controversy, it may be brought in under subdivision (b). The first essential under (b) is a determination that it is a necessary party. If, *as a matter of law*, it is not, then the court abused its discretion when it ordered the joinder.

We consider, first, whether Associates had a *"joint interest"* in the cause of action sued upon. Respondent bases his contention solely upon the agreement between plaintiff and Associates, made more than a year after the Bank paid the check. We first note the precise nature of plaintiff's suit. It was one for a conversion of the check by the defendant Bank, which had paid it to Hayes allegedly upon an unauthorized

signature, plaintiff alleging further that it was at all times the owner of the check and entitled to the proceeds. Defendant answered merely by admissions and denials; the issues, therefore, were relatively simple.[1] The Bank's motion for joinder, aside from formal recitations of the pleadings and the substance of our rule, stated as the sole ground for requiring a joinder, that plaintiff and Associates had entered into a joint venture by virtue of their agreement. That is now the first insistence of respondent in his brief.

A "joint adventure" has been defined many times in our cases. Thus, in Shafer v. Southwestern Bell Telephone Co., Mo., 295 S.W.2d 109, the court said, at loc. cit. 116: "A 'joint adventure,' as a legal concept, is of comparative recent origin, Neville v. D'Oench, 327 Mo. 34, 34 S.W.2d 491, 503, and is founded entirely on contract, either express or implied. It can exist only by voluntary agreement of the parties to it. It has been defined as an 'association of persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill, and knowledge.' 48 C.J.S. Joint Adventures, § 1a. It is in the nature of a partnership, generally governed by the same rules of law, the principal difference being that a joint adventure is usually limited to a single transaction. As a general rule, in order to constitute a joint adventure, there must be a community of interest in the accomplishment of a common purpose, a mutual right of control, a right to share in the profits and a duty to share in the losses as may be sustained." See also, Denny v. Guyton, 327 Mo. 1030, 40 S.W.2d 562; Gales v. Weldon, Mo., 282 S.W.2d 522; Fish v. Fish, Mo.App., 307 S.W.2d 46; Holt v. Queen City Loan & Investment, Inc., Mo., 377 S.W.2d 393. We do not construe this agreement as creating a joint adventure. In the first place, it merely gave to Associates a contingent interest in one-half of the proceeds of plaintiff's anticipated suit, subject to one-half of the cost and expenses, in part payment of plaintiff's debt to it; it did not, as we construe it, give to Associates the right to control or share in the control of the litigation or to dictate a settlement; the limitation on the percentage of attorneys' fees did not constitute such a right of control; and the mere participation in the contingent proceeds of a suit is not, in our view, an "association" to carry out a "business enterprise for profit." The cases supporting the existence of a joint adventure concern the purchase or sale, operation, or construction of specific property or the operation of a business. We have found none which holds one to be a joint adventurer merely because he is to share in the proceeds of a suit, as part payment for a pre-existing debt. There was no joint adventure here, and we hold that there was no joint interest requiring a mandatory joinder. The cases of Wittels v. Jack Dubinsky, Mo.App., 343 S.W.2d 644, Barnett v. Prudential Ins. Co. of America, 239 Mo.App. 670, 194 S.W.2d 317, and Windisch v. Farrow, Mo.App., 159 S.W.2d 392, cited by respondent, merely hold that there is a nonjoinder when all members of an admitted partnership are not made parties. Those cases have no applicability here.

It is not contended that relator did not have the right or capacity to sue the Bank. Section 507.010, RSMo 1959, V.A.M.S. It was and is certainly a real party in interest, and it was at least a trustee of an express trust for Associates, in so far as the latter had an interest in the proceeds of the suit. Relator insists that the agreement did not assign any part of the cause of action to Associates, but merely gave it a contingent interest in the net proceeds. In Keeley v. Indemnity Co. of America, 222 Mo.App. 439, 7 S.W.2d 434, two mortgaged trucks were insured by the

---

1. For an excellent discussion of the nature of such suits, generally, see Chemical Workers Basic Union, Local No. 1744 v.

Arnold Savings Bank, Mo., 411 S.W.2d 159, decided on December 12, 1966.

defendant against loss by fire; both were so destroyed and the owner sued for the loss. He had previously assigned to the mortgagee all his right, title and interest in and to the proceeds of the policies. The defendant insisted that the instrument constituted a full assignment of the claim and that plaintiff could not maintain the suit. The court held to the contrary. It said in part, at loc. cit. 436–437: "That which was given the Harvester Company by the assignment—that is, the proceeds from the insurance policies—was not a legal interest in the proceeds, but an equitable interest therein, and while plaintiff need not have a beneficial interest in the cause of action so as to constitute him the real party in interest, yet he did retain a beneficial interest, * * * plaintiff had the legal title to the cause of action, and his agreement about the distribution of the proceeds does not change that. Whatever interest the Harvester Company had was equitable, for from the instrument itself it will be seen that plaintiff did not assign his cause of action against defendant, but merely assigned whatever proceeds may· ultimately be derived from the policies. In effect, it was an agreement with the Harvester Company that if he (plaintiff) should recover any money on his suit against defendant, he would pay same over to the Harvester Company to cover his debt to it. The proceeds were a matter of the future and something that might never come into being." That case did not specifically involve a joinder, but the principle decided is applicable here. See also, generally, Denton v. Mitchell, Mo.App., 262 S.W.2d 639; Truitt v. National Life & Accident Ins. Co., 236 Mo.App. 1036, 161 S.W.2d 683. In Truitt, the proceeds of an insurance policy were assigned to an undertaker; the beneficiary sued; objection was made to his capacity to sue, and the court said, loc. cit. 686: "The assignment merely creates a beneficial interest in the assignee in the money in question, plaintiff retaining the legal title. It was not an assignment of the cause of action. Plaintiff, at all times, retained the policy and had

it in his possession at the time suit was filed, and there is no claim on the part of the defendant that it paid anyone the $200 in question. Plaintiff is the real party in interest and entitled to maintain this suit." We conclude that relator did not assign one-half of its cause of action to Associates, and that it was not a necessary party as a joint owner thereof.

We next consider whether the presence of Associates was essential to a "complete determination of the controversy." We note, first, that "the controversy" means the suit between the relator and the Bank, not some other controversy between one of the parties and an outsider. While the intervention cases are not specifically in point, their definitions of an "interest" which compels intervention are persuasive. In State ex rel. State Farm Mutual Auto Ins. Co. v. Craig, Mo.App., 364 S.W.2d 343, 95 A.L.R.2d 1321, the court said, loc. cit. 346: "The petitioner for intervention must have an 'interest' in the subject matter of the action. Such interest does not include a mere, consequential, remote or conjectural possibility of being in some manner affected by the result of the original action. It must be such a direct claim upon the subject matter of the action that the intervenor will either gain or lose by direct operation of the judgment to be rendered. State ex rel. Farmers Mutuals Auto Ins. Co. v. Weber, 364 Mo. 1159, 273 S.W.2d 318(4); Laclede Gas Co. v. Abrahamson, Mo., 296 S.W.2d 100, 61 A.L.R.2d 1286; see City of Hannibal v. Winchester, Mo.App., 360 S.W.2d 371, 375."

Respondent seems to argue that Associates would have an independent cause of action on the check, and that it should be joined to foreclose such an action. It relied on no such ground in the motion for joinder, and the ruling on that motion is what we are reviewing here. It is doubtful, to say the least, whether Associates would have any such cause of action; it is not shown to have suffered any loss. Counsel cite no Missouri cases and the only one we have found, First National Bank

**678**

of Kansas City v. Produce Exchange Bank, 338 Mo. 91, 89 S.W.2d 33, involved a cashier's check on which the drawer was primarily liable and which it had paid, thereby suffering a loss. We do not decide the point, nor need we do so, since any independent right of action which Associates might possibly have against the Bank would be entirely separate and distinct from relator's cause of action against it. Consequently, counsels' argument that in a suit by Associates its own negligence would be a defense, is aside from the point. The record does not show that Associates has ever made any claim whatever on the Bank. Its interest in the proceeds of the check is fully represented by relator in the pending suit, all in strict accordance with § 507.010, discussed, supra.

Despite respondent's protestations to the contrary, it would seem that the only legitimate purpose in seeking to join Associates would be to procure indemnity or contribution from it in case of liability, by cross-claim or otherwise. That purpose, where proper, may ordinarily be accomplished through our third-party procedure or by an independent suit; however, we are not required or permitted to rule on the availability of other remedies in the present circumstances. It is obvious that the joinder of Associates as a party in the present litigation would greatly broaden and confuse the original issues. We conclude that the presence of Associates was not necessary for a complete determination of the issues in the suit between relator and the Bank. For a recent discussion and definition of the term "necessary party," see Shepherd v. Dept. of Revenue, Mo.App., 377 S.W.2d 525. Rule 52.04(b) clearly contemplates that a party to be brought in by order of the court shall be a necessary party.

We are further convinced that on the issues raised by the Bank's motion for joinder the question was one of law, and that when the court ordered the joinder, it exceeded its lawful jurisdiction; to put the statement in another way, the question

being one of law, the trial court had no discretion to do otherwise than to deny the motion, although, of course, it had jurisdiction to rule. Associates simply was not a necessary party to the ordinary, uncomplicated conversion suit by the owner of the check. Our alternative writ of mandamus will be made peremptory, directing respondent to vacate its order requiring the joinder of Associates Discount Corporation in relator's action against Merchants-Produce Bank of Kansas City, and also to overrule, without condition, the motion of said Bank to dismiss the cause for alleged nonjoinder. It is so ordered.

All concur.